G. W. SHANNON, ADMINISTRATOR, *v.* EMMA J. DAVIS.

1. WILL. *Construction of. Particular estate and remainder. Case in judgment.*
   The will of R. contained the following provisions: "I bequeath all my property to my wife during her natural life, to be kept by her for the benefit of herself and my children," and "the proceeds of the property shall be used by her in the support, education, and raising of my children," and "at the death of my wife the remaining estate to be divided between all my children or their legal descendants." *Held*, that under this will the wife of R. took an estate for life charged with a trust for the maintenance and education of the children of R. during her life, and on the death of the wife the children of R. take the property as then existing, subject to no diminution except for payment of debts contracted by the wife in pursuance of the will.

2. SAME. *Death of life tenant. Rights of administrator. Growing crops, etc.*
   And in such case on the death of the wife her administrator may take charge of the growing crops and other personal property of the estate of R. for the purpose of paying off such debts as she had contracted in accordance with the provisions of the will, but it is illegal for him to cause to be set aside exempt property for the use of the minor children, or to have any allowance made out of the estate of R. for their support and maintenance.

3. SAME. *Administrator of life tenant's estate. Receiver for trust estate.*
   And in such case where an administrator for the estate of the life tenant has been appointed and partially administered the trust estate left by R., a receiver for such estate will not then be appointed, though it would have been proper so to do in the first place.

APPEAL from the Chancery Court of Yalobusha County.

HON. B. T. KIMBROUGH, Chancellor.

In 1876 one J. C. Robertson died testate, leaving a wife and five children. His wife was made executrix and not required to give bond. Among other provisions the will contained the following:

" 4. I will and bequeath to my kind and affectionate wife, Pernicia A. Robertson, all my entire estate, both real and personal, of every description after the payment of my just debts and funeral expenses during her natural life, to be kept by her for the benefit of herself and my children.

" 5. I desire and direct that the proceeds of the farm and the interest accruing on surplus moneys shall be used by her in the support, education, and raising of my children, hereby fully conferring on my said wife all necessary authority to manage and control all my estate, real and personal, and to collect all debts due my estate and dispose of the same as above directed during her natural life.

" 6. At the death of my wife it is my will that my remaining estate, both real and personal, shall be equally divided between all my children or their legal descendants.

" 7. In the event that the proceeds of the farm and the interest on surplus moneys shall not be sufficient to support my said wife and to raise and educate the children, it is my desire that a sufficient amount of my estate be used for that purpose as my said wife may think best."

Mrs. Robertson qualified as executrix under the will, took charge of the property, which consisted in the main of a farm and appurtenances, collected debts due the estate, and contracted debts in the course of her farming operations. In 1885 Mrs. Robertson died, one of her children, Emma J., having married one Davis, the other children being still minors; thereupon George W. Shannon, the brother of Mrs. Robertson, qualified as administrator of her estate, took charge of the crop that was growing on the farm, gathered and sold the same, took possession of all the personal property on hand, which he duly accounted for to the proper court, and caused allowances to be made for the support and maintenance of the minor children, and procured to be set aside certain exempt property for their use and benefit. While he was thus proceeding to administer the estate of Mrs. Robertson, Emma J. Davis exhibited this bill against G. W. Shannon, administrator, and the other heirs of her mother, Mrs. Robertson, asking that a receiver be appointed to

take charge of the estate of John C. Robertson, deceased. The Chancellor, after hearing evidence by which the facts above stated were substantially shown, ordered that a receiver be appointed to take charge of and take into his possession all the property that Shannon had received or obtained possession of, as the property of either Mrs. Robertson or of John C. Robertson, deceased; that said Shannon replace and deliver to the receiver any moneys or other property he may have used or paid out as belonging to Mrs. Robertson, and that he abstain from further interfering in the matter of the estate of Mrs. Robertson. The administrator Shannon appealed.

*A. H. Whitfield,* for the appellant.

Appellee relies on *Lucas* v. *Lockhart,* 10 S. & M. 466, but it seems to be clearly distinguishable from the case at bar. There were some peculiar features about *Lucas* v. *Lockhart.* The effort there was by a judgment creditor of the widow, Mary Longstreet, to subject certain *slaves,* and the contest turned upon whether or not the will of her deceased husband, James Longstreet, vested in her " any estate in the property embraced in it, which is subject to be seized and *sold under execution at law.*"

And there seems to have been some peculiar statute as regards property in slaves which entered into the decision of this case.

But if not, I submit the language of the two wills and their consequent intendment were wholly different. Robertson says, " I give and bequeath all my estate, real and personal, to my wife, to keep together for the benefit of *herself* and my children ;" then the will further provides that in case the income be insufficient to support her and educate and maintain the children, she may use so much of the corpus as may be necessary to that end, as there is to be no division till her death of the estate left. Clearly she took a beneficial interest, and it seems the soundest construction of the will to hold that she took a beneficial estate for life, with reversion in fee to the children.

*W. P. & J. B. Harris,* on the same side.

The point aimed at in having a receiver appointed is to get rid of the debts contracted by Mrs. Robertson and paid by Shannon,

but this can, be effected without a receiver, if it be right, but the fund in his hands is bound for these debts if they are legitimate charges on the income or property.

The court will not cut off the debts merely because they were contracted by the widow and life tenant in the course of that general management and dealing unavoidable in the administration of such property and business. The will speaks of the wife in such terms as to assure us that the husband did not intend that she should " work as a slave and live as a hermit."

It seems to be plain to us that Mrs. Robertson's relation to the property, the personal chattels of many kinds but of little value, the contracts made to her and with her, required that there should be an administrator appointed for her estate who could respond for that and settle her account as executrix. The court has its hand upon the effects and upon the administrator. If part or all the effects belong to the children as remaindermen or as distributees, they can be distributed through a decree, all parties being before the court. Beyond all doubt, if the administrator of Mrs. Robertson is found to have property belonging to the estate of the testator, or if a balance is found due from her to the estate, it can be controlled and distributed without the aid of a receiver, a perfectly useless factor. The form of the order of appointment requires the administrator to disregard what has been done in the administration. This produces an entanglement.

It is perfectly in the power of the court to correct the pending administration and to require a statement of account of Mrs. Robertson as executrix if it be needed.

There seems to be but one difficulty, and that is whether the debts contracted in the usual course of her management are chargeable to her property, and perhaps some question exists as to the mode of dealing with the minor children. There is nothing in either of these questions that would be solved or advanced by having another *dramatis personæ* before the court.

If the application of the property on hand to the debts of the management is waste it can be checked by an order. But we contend it is not. We call attention to the will. Our interpreta-

tion of the will is that the legal freehold or a life estate was given to the wife, and that no *estate* was given to the children, except in *remainder.* That is to say, the fourth item of the will is, as to this point, to be read with the sixth, for otherwise no *estate* is given to the children. So that as to the corpus of the estate, of which the testator died seized and possessed, it is divided into a life estate and remainder ; as though it had been expressed, " I give my entire estate, real and personal, to my wife during her natural life, and at her death it is to be equally divided between my children and their *descendants."* The introduction of *their descendants* makes this clear, for they, of necessity, could take *nothing* except as remaindermen, and the testator's *children* take, of course, in the same way. The testator has, by other clauses, divided the property into that which existed at his death, the principal or corpus and the income from it, under the scheme which he devised. As to this income, the children of the testator, as to their support, education, and maintenance, " raising," have a charge on it only. A life estate given generally and without qualification would carry the income and profits absolutely, otherwise there would be nothing granted, because that is all the life tenant can ever take in interest. It goes to the wife by implication if nothing had been said about the income. So this legal implication is qualified by the charge in favor of the children for maintenance, education, and support. *Dean* v. *Nunnelly,* 56 Miss. 358.

The life tenant is not deprived of the income, but takes it *cum onere.* She is to apply so much as may be necessary to the " raising" and education of the children, and the balance would be hers —that is to say, the balance of the income. What was necessary to support and educate the children according to station and expectations was carved out of what would by law go to the life tenant.

No question arises here as to the sale by the life tenant, the widow, of any portion of the body of the property, nor is there any complaint that the charge on the usufruct which belonged to her as life tenant has not been fully met. It is to be assumed, therefore, that the life tenant performed the implied trust imposed

by the charge in favor of the children—supporting and educating them.

The result is, as will appear from a well-established rule, she could not be called to account for the *income.*

Mr. Perry, after discussing the doctrine and citing *Lucas* v. *Lockhart,* 10 S. & M. 466, that a definite direction for support and maintenance amounts to a charge and creates an implied trust on the life tenant, proceeds to consider the effect of such charges as to any balance of *income* that might remain after satisfying the charge, and says: " So long as he discharges the trust imposed on him he is entitled to the surplus for his own benefit," p. 91, § 118.

The author is fully borne out in this statement by the cases he cites : *Carr* v. *Living,* 28 Beav. 644 ; *Hara* v. *Hara,* 33 Ib. 88 ; *Leach* v. *Leach,* 13 Simons 304 ; *Brown* v. *Paul,* 1 Simons 92.

*R. H. Golladay,* for the appellee.

1. Under the provisions of the will Mrs. Robertson held the dual position of executrix and trustee. As trustee her powers conferred by the will exceeded the duties of an executor qua executor. As executrix she would collect and pay debts and settle the estate, but could create no debts against the estate. *Hagan* v. *Barksdale,* 40 Miss. ; 45 Miss. 96 ; 52 Miss. 41 ; 54 Miss. 683.

That the widow was a trustee, see *Lockhart* v. *Lucas,* 10 S. & M. And the trust after her death could be better administered by a receiver than an administrator.

Mrs. Robertson ought to have settled her account as executrix and passed the fund to account as trustee. *Sproll, Adm'r,* v. *Baldwin,* 5 Geo. (34 Miss.) 327, 330.

In this case the court says : " The testator by his will directs his estate to be kept together until his youngest child shall arrive at full age or marry, and it is therefore contended that no final settlement of the estate can take place until that time. We disagree with counsel on this point. The estate will be ready for final settlement as soon as the debts are paid, and the legatees can enjoy the entire income or benefit of the property. This provision of the will prescribes duties which can be more properly performed

by a guardian or trustee than by an administrator with the will annexed."

2. Mrs. Robertson did not own the farm or anything on it, so far as the evidence shows, and therefore there was no power in the court to authorize Shannon, as administrator of Mrs. Robertson, to finish the crop at her death. Section 1926, R. C. 1880. "In all cases in which it may be thought to be necessary for the protection of the estate of decedents, minors, and persons of unsound mind, a receiver may be appointed either by the court or by the Chancellor in vacation, subject to the foregoing provisions."

And generally a receiver will be appointed, when? High on Receivers, § 9 *et seq.*

CAMPBELL, J., delivered the opinion of the court.

A receiver should not have been appointed. There is no necessity or reason for it. It was proper to grant administration of the estate of Mrs. Robertson, and her administrator was entitled to the growing crop and other personal property for the purpose of reimbursing her legitimate charges upon it.

The will vested in her an estate for her life charged with a trust for the maintenance and education of the children with remainder to them, and on her death they were entitled to all that was left, but subject to a charge for all the debts she had created in accordance with the will. It would have been proper to have appointed a receiver, instead of an administrator, at the death of the tenant for life, and he could have completed the crop and paid the debts chargeable on the estate, but as an administrator for the tenant for life was appointed, and has partially administered the estate, and as justice to all parties in interest can be done without it, there should not be an overturning of what has been rightly done under the authority of the court.

On the death of Mrs. Robertson there accrued to the children an immediate right to all of the estate on hand, subject to its liability for debts incurred as authorized by the will. The property should not have been treated as that of the tenant for life any further than was necessary to pay the legitimate debts she incurred.

Therefore, setting apart for the use of children exempt property, and making allowance for the support and wearing apparel and tuition of the children was not authorized, and Mrs. Davis is not to have her interest in the estate of her father, as left by her mother, diminished by reason of these things. She is entitled as a tenant in common to claim her interest in the remainder as of the death of the tenant for life, diminished only by the legitimate charges for the reimbursement of the tenant for life in the administration of the trust. As against her the administrator is not entitled to withhold any part of the estate except for the payment of the debts mentioned. There should be a full recognition of her rights as indicated above, and no difficulty will arise as to the other children, who will be chargeable with all they have received from the administrator.

*The decree appointing a receiver is reversed.*